The decision below is signed as a decision of

the court.

Signed: July 05, 2007.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DRG FUNDING CORPORATION, | ) | Case No. 94-00417 |
| | ) | (Chapter 7) |
| Debtor. | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION RE TRUSTEE'S MOTION
FOR AUTHORITY TO ASSIGN JUDGMENT

Wendell Webster, the chapter 7 trustee,[1] has filed a motion for authority to assign a judgment, by which he proposes to assign a pre-petition judgment (the "Judgment") in favor of the debtor, DRG Funding Corporation, against the U.S. Department of Housing and Urban Development ("HUD"), to New England Phoenix Company, Inc. ("NEPCO"), a creditor in this bankruptcy case.  HUD objects on the grounds that the proposed assignment violates the Anti-Assignment of Claims Act, 31 U.S.C. § 3727, which prohibits the assignment of certain claims against the United States.  The Anti-Assignment of Claims Act does not apply to a court-approved

---

[1] On November 2, 2005, David M. Estabrook was removed as trustee and on November 3, 2005 (hereinafter "Initial Trustee"), Wendell W. Webster was appointed successor trustee.

assignment made of a claim against the United States by a bankruptcy trustee and the court will approve the proposed assignment accordingly.

I

BACKGROUND

What follows is a summary of the dispute that gave rise to the Judgment that the trustee now seeks to assign.

In the 1980s, DRG participated in two HUD programs: a coinsurance program and a mortgage-backed securities program operated by the Government National Mortgage Association (GNMA). In connection with DRG's participation in these two programs, DRG initiated litigation challenging HUD's interpretation of the rules surrounding default by mortgagors, claims to HUD for coinsurance proceeds in the form of debentures and the timing of HUD's issuance of debentures, and the date from which the interest on the debentures begins to accrue.  DRG Funding Corp. v. Sec'y of Hous. and Urban Dev., 1988 WL 90197 (D.D.C. 1988). DRG prevailed on appeal.  DRG Funding Corp. v. Sec'y of Hous. and Urban Dev., 898 F.2d 205 (D.C. Cir. 1990).  The case was remanded to the District Court.  On remand, HUD filed a motion for entry of judgment in the amount of $4,379,745.13.  Judgment was entered in favor of DRG in the amount of $4,379,745.13 together with post-judgment interest on June 12, 1991 (DRG Funding v. Sec'y of Hous. and Urban Dev., 88-cv-02202(JHG))(DE No. 86).  On July 2,

2

1991, a second judgment was entered providing for an additional $653,169.58 in pre-judgment interest (DE No. 87).[2] As part of the motion for entry of judgment, HUD requested that the District Court issue an order that would not preclude an administrative offset of a portion of the final judgment. The court declined to address the propriety of an administrative offset.

On August 3, 1990, prior to the District Court's entry of final judgment in favor of DRG, HUD informed DRG of its intent to collect $3,709,926.55 by administrative offset. On July 17, 1991, after the District Court's entry of final judgment in favor of DRG, HUD notified DRG that it had collected this amount from DRG by prior offset. On February 12, 1992, HUD purports to have collected an additional $687,515.96 from DRG by way of administrative offset.

DRG challenged HUD's jurisdiction to collect the offsets before a HUD Administrative Law Judge (ALJ). The ALJ ruled in HUD's favor and DRG sought an immediate appeal to the Secretary of HUD pursuant to 24 C.F.R. § 26.26, which permitted interlocutory appeals. The designee of the Secretary heard the appeal, and she issued her decision in March 1992, upholding the

---

[2] These dates were provided by the District Court's on-line docket. Neither party appears to have specified these date in their papers.

3

ALJ's order.[3]  The Initial Trustee sought mandamus relief in the U.S. District Court for the District of Columbia in an effort to compel HUD to dismiss the offsets.  The District Court case was dismissed without prejudice on the grounds that HUD had not completed its administrative process.  The U.S. Court of Appeals for the District of Columbia affirmed the dismissal of the Initial Trustee's mandamus action.  DRG Funding Corp. v. Sec'y of Hous. and Urban Dev., 76 F.3d 1212 (D.C. Cir. 1996).

II

THE ANTI-ASSIGNMENT OF CLAIMS ACT DOES NOT
APPLY TO COURT-APPROVED ASSIGNMENTS IN BANKRUPTCY

The Anti-Assignment of Claims Act, 31 U.S.C. § 3727, provides that "a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim . . . may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued."  Notwithstanding the broad language of the Act, application of the rule "was very early relaxed in cases which

---

[3] As explained in the Circuit Court's opinion, the ALJ's determination that HUD had jurisdiction to collect the offsets, absent a determination of the amount and validity of the debt claimed to be offset, does not constitute "final agency action." In order to be considered final agency action, it is necessary for a deputy assistant secretary to make a determination of indebtedness in a written decision which includes the supporting rationale for the decision. DRG Funding Corp. v. Sec'y of Hous. and Urban Dev. (D.C. Cir., February 20, 1996); 24 C.F.R. § 17.110(a).

4

were thought not to be productive of the evils which the statute was designed to obviate," United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 373 (1949), and it is now widely recognized that although the Anti-Assignment Act "generally prohibits the voluntary assignment of demands against the government, [it] does not prohibit assignments or transfers of claims against the United States that occur involuntarily by operation of law." Saint John Marine Co. v. United States, 92 F.3d 39, 48 (2d Cir. 1996) (internal quotations and citations omitted).[4]  Accordingly, claims against the United States held by a debtor on the commencement of a bankruptcy case pass to the bankruptcy trustee without offending the Act.  See Erwin v. United States, 97 U.S. 392 (1878) (the Act "applies only to cases of voluntary assignment of demands against the government.  It does not embrace cases where there has been a transfer of title by operation of law.  The passing of claims to heirs, devisees, or assignees in bankruptcy is not within the evil at which the statute aimed . . . .").  Indeed, the "operation of law" exception goes even further, and applies as well to the

---

[4] See also, Hager v. Swayne, 149 U.S. 242, 247 (1893) (distinguishing voluntary assignments from those occurring by operation of law); Price v. Forrest, 173 U.S. 410 (1899) (upholding assignment of claim against government to receiver); United States v. Boercherling, 185 U.S. 223 (1902) (same); Goodman v. Niblack, 102 U.S. 556, 560 (1880) (voluntary assignment for the benefit of creditors included claims against the government without offending the Act).

disposition of such a claim pursuant to court process.  See Western Pac. R.R. v. United States, 268 U.S. 271, 273 (1925) (upholding assignment of claim through a judicial sale in a railroad receivership, and permitting the assignee to sue on the claim).[5]  The holding of Western Pac. R.R. logically applies to bankruptcy court orders just as well as receivership court orders, and it has been so held.  In re Pottasch Bros. Co., 11 F. Supp. 275, 277 (S.D.N.Y.) (citations omitted), aff'd, 79 F.2d 613 (2d Cir. 1935) (stating, 79 F.2d at 615, that a transfer by court order "would be a transfer wholly 'by operation of law' and

---

[5]  See also, Sch. Feeding Corp. v. United States, 221 Ct. Cl. 906 (1979) (state court judgment assigning claim against the United States by way of a "Sheriff's Certificate of Sale of Personalty" was analogous to a judicially compelled sale and not barred by anti-assignment statute); New Rawson Corp. v. United States, 55 F. Supp. 291, 293 (D. Mass. 1943) (anti-assignment statute does not apply to a transfer of a claim through a judicial sale under court order in receivership); In re Gerstenzang, 5 F. Supp. 904, 905 (S.D.N.Y. 1933) (court observed that bankruptcy trustee would have been permitted to sell claim against the United States pursuant to court order without the transfer being ineffective under the Anti-Assignment Act, but the sale was held not to have included the claim against the government); Export Oil Corp. v. United States, 64 Ct. Cl. 342 (1928) (court-ordered conveyance of claim against the United States occurred by operation of law and was not subject to the anti-assignment statute); Davis Sewing Machine Co. of Delaware v. United States, 60 Ct.Cl. 201 (1925), aff'd, 273 U.S. 324 (1927) (purchaser of court-approved sale in receivership could sue on purchased claim against government).  Cf. Brooks v. Mandel-Witte Co., 54 F.2d 992 (2d Cir.), cert. denied, 286 U.S. 559 (1932) (upholding court-imposed lien upon the debtor's claim against the government).

therefore valid," notwithstanding the Anti-Assignment Act).[6]

Thus, although a bankruptcy trustee's assignment of a claim against the United States is voluntary in the sense that it is accomplished through an elective and deliberate act, for purposes

---

[6] In Pottasch Bros., the claims against the government had not been reduced to money when the order was entered addressing the parties' stipulation that the assignment of the claims to a bank were to be effective.  Later, the claims were paid to the trustee who then attempted to retain the funds received and to deprive the bank of the funds, invoking the Anti-Assignment Act, and, accordingly, the government was not a party to the dispute.  But that difference with the instant case (in which the claims have not been paid by the government) does not matter.  As explained below, the Anti-Assignement Act as it read and had been interpreted by the Supreme Court when Pottasch Bros. was decided, required that the assignments be effective against the government or not at all: that a bankruptcy trustee raised the statute as a defense was no different than if the government were sued by the assignee and raised the defense.  Accordingly, Pottasch Bros. necessarily held that a claim against the government could be enforced against the government by an assignee holding the claim pursuant to a bankruptcy court order approving the assignment.

The version of the Anti-Assigment Act in force when Pottasch Bros. was decided provided that assignments in violation of the Anti-Assignment Act were "absolutely null and void," and an early decision held that such assignments were a nullity, not merely unenforceable against the government.  See Nat'l Bank of Commerce of Seattle v. Downie, 218 U.S. 345, 356-57 (1910) (debtor's pledges to banks of claims against government were null and void and passed to bankruptcy trustee to administer for the benefit of unsecured creditors).  Only after Pottasch Bros. did the Supreme Court undercut Downie by holding that only the government could invoke the statute's protections, and allowing assignees to enforce their assignments once the government paid the claims. See In re Ideal Mercantile Corp., 244 F.2d 828 (2d Cir.), cert. denied, 355 U.S. 856 (1957).  And it was not until 1982 that the Anti-Assignment Act was amended to eliminate its "null and void" language, and that "[t]he absence of such language render[ed] Downie an anachronism."  See McAllister Towing v. Ambassador Factors (In re Topgallant Lines, Inc.), 125 B.R. 682, 690 (Bankr. S.D. Ga. 1991).

of the Anti-Assignment of Claims Act, such assignment is deemed to occur "by operation of law" and is not prohibited.

                                III

THE PROPOSED ASSIGNMENT DOES NOT OFFEND THE PURPOSES OF THE ACT

The Supreme Court made it clear "[f]rom the earliest days of the Act . . . that the plain language of the Anti-Assignment Act is not controlling . . . . [and] that courts should [instead] consider whether the assignment in question implicates the purposes of the Act." Centers v. United States, 71 Fed. Cl. 529 (2006). The Act's primary purpose is "to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the government, and . . . [a] second purpose [is] to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant." United States v. Shannon, 342 U.S. 288, 291 (1952) (quoting United States v. Aetna Cas. and Sur. Co., 338 U.S. 366 (1949)). Additionally, the statute is intended to "save to the United States defenses which it has to claims by an assignor by way of set-off, counter claim, etc., which might not be applicable to an assignee." Id. (quoting Grace v. United States, 76 F. Supp. 174 (D.C. 1948)).

The Supreme Court, however, has held that assignments occurring by operation of law are always exempt from the

prohibition of the Anti-Assignment Act, without regard to whether such an assignment might contravene the purposes of the Act. Aetna Cas. & Sur. Co., 338 U.S. at 375. The supporting rationale is that, unlike voluntary assignments, when an assignment occurs by operation of law "there can be no purpose in such cases to harass the government by multiplying the number of persons with whom it has to deal, nor any danger of enlisting improper influences in advocacy of the claim, and that the exigencies of the party who held it justified and required the transfer that was made." Goodman v. Niblack, 102 U.S. at 560, quoted in Aetna Cas. & Sur., 338 U.S. at 376.

Unless and until this court approves the proposed assignment, however, there is no assignment occurring "by operation of law" to speak of. Accordingly, it arguably remains within this court's discretion to consider the purposes of the Act before approving the assignment. For the reasons stated below, the court is satisfied that, based on NEPCO and the trustee having agreed to clarify the language of the assignment, the proposed assignment does not offend the purposes of the Act.

First, there is no allegation that NEPCO is buying up claims in an effort to improperly influence the government. NEPCO is merely a creditor of the estate seeking to maximize recovery on its claim. Thus, the primary purpose of the Act, as articulated in United States v. Shannon, 342 U.S. 288 (1952), is not offended

by the proposed assignment.

A second stated purpose of the Act is "to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant." Id.  Given HUD's participation in and the overall visibility of the instant proceedings, the proposed assignment does not pose a legitimate risk of inadvertent double payment by the government, nor does it put HUD to the task of investigating whether or not its claim has or has not been assigned.

HUD contends that the proposed assignment would frustrate the purpose of the Anti-Assignment of Claims Act because it would force the United States "to defend a suit through the courts and deal with persons who were strangers to the original claim, which the Trustee/Assignor acknowledges has no value in its hands. . . . [and because] [o]ne of Congress' basic purpose[s] in passing the ACA was to prevent multiplying the number of persons with whom the government had to deal."  Although the Act may seek to minimize the number of parties with whom the government must deal, it does not present an absolute bar to substitution of parties.  Indeed, HUD does not dispute that transfers of claims from a debtor to a bankruptcy trustee occur by operation of law and are not subject to the Act.  Thus, had the trustee elected to pursue rather than assign the Judgment to NEPCO, HUD would

nevertheless be left to litigate with a party other than DRG.[7] In effect, HUD lost the privilege of insisting that it deal exclusively with DRG when DRG filed for relief under Chapter 7 of the Bankruptcy Code. Although HUD would like to deal in litigation of the enforceability of the Judgment with only the trustee as the successor to the debtor's books and records, that desire is outweighed by the need of the trustee promptly to administer the case by way of assigning a judgment that may take a long time to resolve. As a practical matter, the trustee is just as much a stranger to DRG's prepetition affairs as is NEPCO, and, once the Judgment is assigned to NEPCO, the trustee is subject to discovery, both before and after commencement of litigation, if he is in possession of information pertinent to

---

[7] In its opposition, HUD argues that the Judgment never became property of the estate because the Judgment was satisfied by way of administrative off-set pre-petition. Section 541(a)(1) of 11 U.S.C., however, broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." See Affiliated Computer Sys., Inc. v. Sherman (In re Kemp), 52 F.3d 546, 550 (5th Cir. 1995)("The scope of property rights and interests included in a bankruptcy estate is very broad: The conditional, future, speculative, or equitable nature of an interest does not prevent it from being property of the bankruptcy estate); Hoseman v. Weinschneider, 277 B.R. 894 (N.D. Ill. 2002) (property of the estate includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative . . . as long as the interest is actual")(quoting In the Matter of Yonikus, 996 F.2d 866 (7th Cir. 1993) and citing Segal v. Rochelle, 382 U.S. 375 (1966)). DRG's interest in the Judgment, albeit subject to or contingent upon the outcome of the administrative proceedings, became property of the estate upon commencement of this bankruptcy case.

11

the dispute.

Furthermore, contrary to HUD's contention, Webster's assessment that the claim is worthless to the estate is not tantamount to a concession that the Judgment has been satisfied. Various considerations may factor into a trustee's decision not to pursue a claim on behalf of the estate, including not only the merits of a cause of action, but also the burden to the estate of liquidating the claim and the uncertainty of the outcome of litigation.  On the current record, the court can only speculate as to how Webster and his attorney concluded that the Judgment was of no value to the estate, and the court cannot assume that it was based merely on a determination that the Judgment has been satisfied.

Finally, neither the law nor the facts support HUD's assertion that the proposed assignment presents a genuine risk to HUD's asserted right to setoff.  First, it is well-established that "[a]n assignee of a judgment against the United States takes it subject to the right of the Government to a setoff pursuant to [31 U.S.C. § 3728.]"  Hornbeck Offshore Operators, Inc. v. Ocean Line of Bermuda, Inc., 849 F. Supp. 434 (E.D. Va. 1994) (citing United States v. Transocean Air Lines, 386 F.2d 79 (5th Cir.), cert. denied, 389 U.S. 1047 (1967)); Teller v. United States, 113 F. 463 (8th Cir. 1901)); Gen. Elec. Credit Corp. v. Sec. Bank, 244 A.2d 920, 923 (D.C. App. 1968), cited in Am. Lumber Corp. v.

Nat'l R.R. Passenger Corp., 886 F.2d 50 (3d Cir. 1989), ("an assignee of a chose of action takes it subject to all defenses, including any valid set-off based on facts existing at the time of the assignment"). Second, both parties to the assignment - - Webster and NEPCO - - appear to contemplate a resolution of the administrative offset proceedings before NEPCO will seek to enforce the Judgment. For example, Webster advises the court "that based upon the form of the assignment approved by this Court, HUD is not precluded from asserting any valid defenses against the assignee . . . . [because] [a]n assignee is generally subject to the same defenses, including set-offs, as the assignor," emphasizing that "[t]he assignment specifically states that the Judgment is assigned 'as is' 'with all faults' and 'without representation or warranty, express or implied as to ownership, collectability, enforceability or any other matter." (DE No. 155).[8] Similarly, NEPCO indicates that "[u]pon assignment of the Judgment, NEPCO intends to ask HUD to complete its administrative offset process. After reviewing the agency's final decision, we will decide if any further steps are warranted." Mem. in Support of Motion for Authority to Assign at

---

[8] Webster neglects to point out that, notwithstanding the foregoing language, the proposed assignment also states that "the aforesaid judgment is assigned free and clear of any encumbrances, liens, security interests, rights of offset or other interests." This language is inconsistent with Webster's representation that NEPCO would be subject to HUD's defense of set-off.

p. 6 n. 2.  Implicit in NEPCO's statement is NEPCO's intent to step into DRG's shoes for purposes of the administrative offset proceedings, presumably picking up where DRG left off in challenging the underlying merits of HUD's asserted offsets.  If, rather than challenging the merits of HUD's asserted offsets, NEPCO were to argue that HUD's offsets are altogether ineffective against an assignee of the Judgment, such strategy would be inconsistent with NEPCO's representations to this court.

To avoid any confusion, to assuage HUD's concerns as to its continued right to assert its alleged setoff against the Judgment, and to commit Webster and NEPCO to the positions they have taken in these proceedings, the court requested NEPCO and the trustee to agree that the assignment be amended to expressly reflect that NEPCO takes the assignment subject to HUD's previously asserted right to offset and any other defenses it had against DRG.  At the hearing on the motion, they both agreed to that limitation.

IV

THE JUDGMENT IS NOT AN ALLOWED
CLAIM WITH "NOTHING FURTHER TO BE DONE"

Although the trustee's motion is being granted, it is noted that some of NEPCO's arguments made in support of the motion are meritless.  The Anti-Assignment of Claims Act applies only to unallowed claims against the United States.  NEPCO contends that the Judgment is an allowed claim and therefore not subject to the

14

Act's prohibition of assignments "because it is a final judgment entered by a federal court with nothing further to be done." NEPCO's Mem. in Support at 2.  Although the District Court entered a final judgment in favor of DRG, the currently pending administrative offset proceedings render uncertain the amount actually owed on the Judgment.  Even NEPCO implicitly acknowledges that final agency action is required before it can enforce the Judgment ("Upon assignment of the Judgment, NEPCO intends to ask HUD to complete its administrative offset process.  After reviewing the Agency's final decision, we will decide if any further steps are warranted.").  The lack of finality in the administrative offset proceedings is the very reason the federal courts rejected the Initial Trustee's effort to enforce the Judgment by way of a writ of mandamus.  As explained by the U.S. Court of Appeals for the D.C. Circuit:

> [DRG] is merely being forced to pursue its claim
> through the administrative process it invoked.  If the
> corporation thinks that process is taking too long, it
> may seek relief under 5 U.S.C. § 706(1).  If the
> corporation is unhappy with the outcome of that process
> once it has ended, it may seek judicial review then.
> At that point, HUD's ultimate decision on the proper
> collection procedures will have merged into its overall
> decision on the merits of the corporation's claims.
> Contrast Cohen, 337 U.S. 541, 546 (1949).  In the
> meantime, we will not interfere with the work of the
> agency.
>
> The district court also was right in not compelling the
> agency to pay the corporation before that work is done.
> At oral argument, the corporation attempted to portray
> its case as nothing but a garden-variety attempt to
> enforce a judgment through the federal mandamus

15

> statute, 28 U.S.C. § 1361. While mandamus may be an
> appropriate way to enforce a judgment in some
> circumstances, see Hines v. United States, 105 F.2d
> 85,92 (D.C. Cir. 1939), the district court chose not to
> go that route. Mandamus is an extraordinary remedy,
> available only if other relief is inadequate. Women's
> Equity Action League v. Cavazos, 906 F.2d 742, 751
> (D.C. Cir. 1990). As we have already indicated, the
> other relief available here is adequate: the bankrupt
> corporation may file suit after the administrative
> review is final.

DRG Funding Corp. v. Sec'y of Hous. and Urban Dev., 76 F.3d 1212, 1216 (D.C. Cir. 1996) (internal citations omitted). That the Judgment was entered in a forum different from that in which the validity and amount of HUD's administrative offsets are being adjudicated does not render the Judgment enforceable prior to the conclusion of the offset proceedings. Until the propriety of HUD's attempted offsets is adjudicated, the amount that remains owed on the Judgment is unknown. As such, the court cannot conclude that the claim sought to be assigned by the trustee to NEPCO has been "allowed, the amount of the claim . . . decided, and a warrant for payment of the claim . . . issued." 31 U.S.C. § 3272.

Moreover, HUD's alleged delay of the administrative proceedings is irrelevant to the question of whether the assignment should be allowed. NEPCO contends that HUD has indefinitely delayed the administrative proceedings to its advantage, stating that "[i]n effect, HUD has created an administrative Catch-22: it refuses to pay the Judgment on the

16

grounds of a pending, non-final administrative process and then chooses not to reach a 'final' administrative decision." NEPCO Memorandum at 5.  An agency that unreasonably delays its administrative proceedings is not deemed to have waived the protections of the Anti-Assignment of Claims Act, and even if HUD has unreasonably delayed the administrative proceedings, such delay does not entitle the trustee to execute assignments that are otherwise prohibited under the Anti-Assignment of Claims Act. As observed by the U.S. Court of Appeals for the D.C. Circuit, if a party to an administrative proceeding believes the agency has unreasonably delayed or unlawfully withheld final agency action, its remedy is to seek to compel that agency to act under 5 U.S.C. § 706(1).  Thus, either trustee could have invoked this remedy had they believed HUD had unfairly delayed the proceedings.

V

For all of these reasons, the court will grant the trustee's motion.  An order follows.

[Signed and dated above.]


Copies to:

Trustee; Counsel for NEPCO; Counsel for HUD.